FILED
MAY 11 2012
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                      DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELBY RAMSEY, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiff,<br>vs.<br><br>CARDTRONICS USA, INC., et al.,<br><br>　　　　　　　　　　　　Defendants. | CASE NO. 11-CV-1511 BEN (BLM)<br><br>**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket No. 23] |

　　　Presently before the Court is a Motion for Summary Judgment by Defendants Cardtronics USA, Inc. and Cardtronics, Inc. (collectively, "Cardtronics"). (Docket No. 23.) For the reasons stated below, summary judgment in favor of Cardtronics is **GRANTED IN PART**.

## BACKGROUND

　　　Cardtronics owns and operates over 45,000 ATMs across the United States. (Statement of Material Facts ("SMF") [Docket No. 23-2] ¶ 1.) Cardtronics maintains a policy to ensure that posted notices, called "Network Decals," are attached to its ATMs. (*Id.* ¶ 4.) The Network Decals serve two purposes: (1) to provide a fee notice, and (2) to list the participating ATM networks that can be accessed using the ATM. (*Id.* ¶¶ 6-8.) The Network Decals are attached to the ATMs using a strong epoxy, which is applied to a sticker made from polycarbonate. (*Id.* ¶¶ 55-56.) The sticker has a strong adhesive backing that will likely not become detached from the ATM without human intervention. (*Id.* ¶ 55.)

All ATMs owned by Cardtronics are brought to Cardtronics' warehouse in Houston, Texas, for pre-installation programming, configuration, and set-up ("staging"). (*Id.* ¶¶ 9-10.) A standard form, titled "Cardtronics Prep/Re-Furb Work Order," lists the possible staging tasks that may be required for an ATM. (*Id.* ¶¶ 12-13.) A Cardtronics employee in the Program Management team reviews the bill of material and the specifications of the customer that will house the ATM, then customizes the Work Order to include the proper components, quantity numbers, and model numbers. (*Id.* ¶¶ 14-15.) Every Work Order that is generated requires that a Network Decal be placed on the ATM. (*Id.* ¶ 16.)

Next, the Work Order is sent to a technician at the Cardtronics warehouse. (*Id.* ¶ 17.) The technician uses the Work Order as a roadmap for what features are required for the ATM, and makes changes to the ATM accordingly. (*Id.* ¶ 18.) Another Cardtronics employee, typically the shipping and receiving clerk, will check off that the required tasks have been completed on the Work Order before the ATM is shipped out. (*Id.* ¶ 19.)

After the ATM is staged, it is shipped to its permanent location for installation. (*Id.* ¶ 21.) Cardtronics uses third-party vendors to install the ATMs on-site. (*Id.* ¶ 22.) The installation vendors must use a standard Cardtronics form titled "Installation Authorization" as a checklist during installation. (*Id.* ¶ 23.) The Installation Authorization contains a section relating to "Installation Details," which asks the technician whether the Network Decal has been applied to the ATM. (*Id.* ¶¶ 24-25.) The Installation Authorization also asks whether the technician has taken a picture of the installed ATM. (*Id.* ¶ 27.)

The vendor then sends the completed Installation Authorization and pictures to Cardtronics with its invoice for payment. (*Id.* ¶ 28.) Once the materials are received, the Merchant Scheduling team reviews the form for completeness and for any discrepancies with the ATM. (*Id.* ¶ 29.) If there is a problem, the Cardtronics employee works with the vendor to fix the problem. (*Id.* ¶ 30.) For instance, if the Network Decal is missing, Cardtronics sends a Network Decal to the vendor to be applied to the ATM. (*Id.* ¶ 31.)

If the ATM is owned by an independent store but will be operated under contract by Cardtronics, a similar process is used. The staging process does not occur in the Cardtronics

warehouse, but rather, the ATM is shipped directly from the manufacturer to the installation site. (*Id.* ¶¶ 32-33.) Cardtronics sends the third-party vendor the materials that would have been used during the staging process, including the Network Decal. (*Id.* ¶ 34.) The vendor then stages and installs the ATM, using the Installation Authorization form. (*Id.* ¶¶ 35-36.)

If an existing ATM is replaced, Cardtronics uses different terminology for the on-site process. Instead of referring to "installation," Cardtronics refers to "reprogram." (*Id.* ¶ 37.) The ATM that is already on-site is reprogrammed using the same basic process that is followed in the Cardtronics warehouse. (*Id.* ¶ 39.) Cardtronics sends a Network Decal to the third-party vendor for application to the ATM. (*Id.* ¶ 40.) The technician performing the on-site reprogram uses a form titled "Reprogram Authorization." (*Id.* ¶ 41.) The relevant portions of the Reprogram Authorization are similar to the Installation Authorization, but use different terminology. (*Id.*) The Reprogram Authorization asks whether the "Surcharge/Network decal" has been applied. (*Id.* ¶ 42.) In addition, the Reprogram Authorization asks the technician to take a picture of the installed ATM. (*Id.* ¶ 43.)

When Cardtronics dispatches vendors to ATMs for repair, maintenance, or cash replacement, Cardtronics instructs its vendors to only complete the work authorized by Cardtronics. (*Id.* ¶ 52.) Cardtronics does not instruct its vendors to remove the Network Decals, except where a new one is provided to replace an older one. (*Id.* ¶ 53.)

Cardtronics' procedures for ensuring that Network Decals are affixed to its ATMs are highly successful. Cardtronics is currently auditing its ATMs in order to place Braille instructions on each ATM. (*Id.* ¶ 44.) As part of this process, Cardtronics has instructed its vendors to check whether the ATMs have Network Decals, and to identify those with missing Network Decals so that Cardtronics can place new ones on those ATMs. (*Id.* ¶¶ 47-48.) Of the 8,877 ATMs that Cardtronics has visited, 87 were missing Network Decals. (*Id.* ¶ 49.) In other words, over 99% of the ATMs had Network Decals. (*Id.* ¶ 50.)

The ATM at issue here is located on Fifth Avenue in San Diego, California. (*Id.* ¶ 60.) The ATM is owned by an independent merchant, and Cardtronics operates the ATM under a contract with the merchant. (*Id.* ¶ 61.) According to Cardtronics' records, a Cardtronics vendor placed a Network Decal on the ATM during a June 2008 reprogram. (*Id.* ¶ 62.) In June 2010, the merchant replaced the

ATM with a new ATM. (*Id.* ¶ 63.) Cardtronics' records show that Cardtronics provided the vendor who reprogrammed the new ATM with another Network Decal, along with instructions to place the Network Decal on the ATM. (*Id.* ¶ 64.) The installation notes indicate that the process was completed. (*Id.* ¶ 65.) In April 2011, the merchant contacted Cardtronics to report that the Network Decal was missing. (*Id.* ¶ 66.) Cardtronics sent the merchant a replacement Network Decal four days later. (*Id.* ¶ 67.)

Plaintiff Shelby Ramsey filed the present action on July 7, 2011. (Docket No. 1.) The complaint asserts two claims: (1) violation of 15 U.S.C. § 1693 *et seq.* and 12 C.F.R. 205 *et seq.* against all defendants, and (2) violation of California Business & Professions Code § 17200 against all defendants. Presently before the Court is Cardtronics' Motion for Summary Judgment. Being fully briefed, the Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1.

## DISCUSSION

Summary judgment must be granted where the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party satisfies this burden, the nonmoving party must go beyond the pleadings to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp.*, 477 U.S. at 324. "These principles apply equally whether summary judgment is granted on the merits of the claim, or on an affirmative defense." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995); *see also Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994).

### I. THE ELECTRONIC FUND TRANSFER ACT

The Electronic Fund Transfer Act ("EFTA") governs many types of electronic fund transfers, including ATM transfers. *See* 15 U.S.C. § 1693a(7). The EFTA "require[s] any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the

service is provided) of—(i) the fact that a fee is imposed by such operator for providing the service; and (ii) the amount of any such fee." 15 U.S.C. § 1693b(d)(3)(A); *see also* 12 C.F.R. 205.16(b). Subparagraph B requires that notice be provided both on the machine and on the screen. 15 U.S.C. § 1693b(d)(3)(B); *see also* 12 C.F.R. § 205.16(c). The notice on the machine must state either that (1) a fee *will* be imposed, or (2) if there are circumstances in which a fee will not be imposed, that a fee *may* be imposed. 12 C.F.R. § 205.16(c). No fee may be imposed unless these notice requirements are met. 15 U.S.C. § 1693b(d)(3)(C); 12 C.F.R. § 205.16(e). Customers may recover statutory damages under the EFTA. 15 U.S.C. § 1693m(a).

Cardtronics does not dispute that the ATM at issue here charged customers a fee, that it was required to post a fee notice on the ATM, or that such a fee notice was missing from the ATM. Rather, Cardtronics argues that it is shielded from liability under two affirmative defenses: the bona fide error defense and the safe harbor defense. As the safe harbor defense shields Cardtronics from liability, the bona fide error defense need not be addressed.

### A. Safe Harbor Defense

The safe harbor defense is applicable to the ATM at issue here because there is evidence that a fee notice was originally affixed to the ATM. The safe harbor defense provides: "If the notice required to be posted pursuant to section 1693b(d)(3)(B)(i) of this title by an automated teller machine operator has been posted by such operator in compliance with such section and the notice is subsequently removed, damaged, or altered by any person other than the operator of the automated teller machine, the operator shall have no liability under this section for failure to comply with section 1693b(d)(3)(B)(i) of this title." 15 U.S.C. § 1693h(d).

The business records for the ATM at issue establish that Cardtronics applied the required fee notice to the machine. A Cardtronics vendor placed a Network Decal on the ATM during a June 2008 reprogram. (SMF ¶ 62.) When the merchant replaced the ATM with a new ATM in June 2010, Cardtronics provided the vendor who reprogrammed the new ATM with another Network Decal, along with instructions to place the Network Decal on the ATM. (*Id.* ¶¶ 63-64.) The installation notes indicate that the process was completed. (*Id.* ¶ 65.) In April 2011, the merchant contacted Cardtronics to report that the Network Decal was missing. (*Id.* ¶ 66.) Cardtronics sent the merchant a replacement

Network Decal four days later. (*Id.* ¶ 67.)

In addition, Cardtronics did not remove the Network Decal. Cardtronics documents the changes it makes to its ATMs, and has no record of removing the Network Decal on the ATM at issue here. Cardtronics does not typically require that the Network Decals be removed and updated with new ones. (*Id.* ¶ 54.) Cardtronics also documents changes made by its vendors, and has no record of its vendor removing the Network Decal from the ATM at issue. Through this undisputed evidence, Cardtronics has established that the Network Decal was removed by a third-party. *See Piontek v. Penn Sec. Bank & Trust Co.*, No. 10-cv-1038, 2011 WL 1002194, at *4 (M.D. Pa. Jan. 31, 2011) (photographs and affidavit stating that no one in the company would have removed the on-machine notice adequately established a defense under § 1693h(d)).

Plaintiff has not offered evidence to rebut these facts. Accordingly, Cardtronics is shielded from liability by the safe harbor defense. *See Piontek*, 2011 WL 1002194, at *4 (granting summary judgment on safe harbor defense to an ATM operator where "defendant's affidavit and photos tend to show that the required external notice was posted on the ATM in question and that the notice was removed by some third party").

### B. Plaintiff's Opposition

Plaintiff does not address Cardtronics' arguments on their merits. Rather, Plaintiff makes a procedural request under Federal Rule of Civil Procedure 56(d) for additional discovery to support their opposition.

The Scheduling Order established that the first phase of discovery in the instant action had to be completed on or before January 6, 2012. (Scheduling Order [Docket No. 10], at 3 ¶ 6.) It required that all discovery be served in time so that responses would be due by January 6, 2012. (*Id.*) Written discovery therefore had to be served by December 7, 2011. (*See id.*) On December 8, 2011, Plaintiff served Cardtronics with Plaintiff's First Set of Interrogatories and First Request for Production of Documents. (Golovach Decl. [Docket No. 31-1] ¶ 3.) On January 9, 2012, Cardtronics served its responses to Plaintiff's written discovery. (*Id.* ¶ 4.) In response to each of the interrogatories and document requests, Cardtronics claimed that Plaintiff's written discovery "was untimely served pursuant to paragraph 6 of the Case Management Conference Order Regulating Discovery And Other

Pretrial Proceedings (Dkt. [10]), and that no response is therefore required." (*Id.*)

Plaintiff argues that because Cardtronics has not provided substantive responses to her written discovery requests, she is unable to "present facts essential to justify the opposition to the Motion." (Opp. [Docket No. 31] at 2.) Plaintiff argues that the Court should grant her relief pursuant to Rule 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). In addition, she argues that her written discovery was untimely because of a calendaring error, and such a calendaring mistake falls within the parameters contemplated by Federal Rule of Civil Procedure 60(b)(1).

As explained above, the Scheduling Order established that the first phase of discovery in the instant action had to be completed on or before January 6, 2012. Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Therefore, a party must demonstrate "good cause" for an extension of discovery. FED. R. CIV. P. 16(b)(4); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Plaintiff's failure to conduct discovery is not a "good cause" to allow more time for discovery, especially where discovery closed two months earlier. *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, No. 10-cv-0677, 2011 WL 455896, at *1-2 (S.D. Cal. Feb. 1, 2011) (no good cause where party sought relief approximately one month after close of discovery); *Justin v. City & Cnty. of San Francisco*, No. C 05-4812, 2008 WL 544466, at *3-4 (N.D. Cal. Feb. 26, 2008) (no good cause where plaintiffs waited until end of discovery to seek depositions and delayed in seeking extension of discovery period).

In addition, Plaintiff failed to timely move to compel Cardtronics to respond to her discovery requests. According to the Scheduling Order, any motion to compel was required to be filed by February 6, 2012. (Scheduling Order [Docket No. 10], at 3 ¶ 6 ("In addition, all discovery motions must be filed within thirty (30) days after the close of discovery.").) Plaintiff, however, did not request that additional discovery be conducted until she filed her opposition brief on March 5, 2012, a month after the deadline had passed. Her failure to move to compel Cardtronics' discovery responses is a

lack of diligence that bars her claim under Rule 56(d). *See Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1117-18 (9th Cir. 1999) (party's failure to timely move to compel discovery, despite knowing about other party's refusal to produce documents, was grounds to not allow additional discovery under Rule 56(f)).[1]

Plaintiff's request for relief under Rule 56(d) fails for several reasons. First, Plaintiff must make a motion under Rule 56(d) for a continuance and for leave to conduct additional discovery; she may not raise a request for relief under Rule 56(d) in an opposition brief. *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f). Rule 56(f) requires affidavits setting forth the particular facts expected from the movant's discovery. Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment."); *see also Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 751 (9th Cir. 2001) (affirming denial of Rule 56(f) request and finding that inclusion of request in opposition brief was "plainly inadequate"). Here, Plaintiff has not made a motion for a continuance or for leave to conduct additional discovery, but rather refers to the need for additional discovery in her opposition to Cardtronics' Motion for Summary Judgment.

Second, a party may only be granted relief under Rule 56(d) if the party has previously been diligent in conducting discovery. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) (affirming denial of former Rule 56(f) request because "plaintiff's prior discovery efforts were not diligent"). Here, Plaintiff has not been diligent, as she has not timely served discovery. As explained above, the Scheduling Order required that all written discovery be served by December 7, 2011, in order for responses to be due by January 6, 2012. Although Plaintiff had seven months to serve discovery requests, Plaintiff did not serve written discovery until December 8, 2011, a day after the deadline. Because Plaintiff has failed to take discovery, she may not request additional discovery. *Brae Transp.*, 790 F.2d at 1443 ("Having taken no discovery, [plaintiff] can hardly argue at this late

---

[1] Rule 56(d) was formerly Rule 56(f). "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." FED. R. CIV. P. 56, Committee Notes on Rules—2010 Amendment. Precedent under Rule 56(f) applies to Rule 56(d). *See Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011).

date that the district court abused its discretion in ruling on the summary judgment in light of the fact that [plaintiff] itself failed to pursue the procedural remedy which the Federal Rules so clearly provided." (internal quotation marks omitted).)

In regards to Plaintiff's invocation of Rule 60(b)(1), Rule 60 does not apply here. Rather, Rule 60 applies to a "final judgment, order, or proceeding." *See* FED. R. CIV. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect."); *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 (9th Cir. 2010). The applicable rule here is Rule 16, as discussed above. *See Hoffman v. Tonnemacher*, No. CIV F 04-5714, 2007 WL 2318099, at *1 n.1 (E.D. Cal. Aug. 10, 2007) (request to modify pre-trial order should be brought under Rule 16, rather than Rule 60(b)).

Lastly, Plaintiff incorporates the arguments made by Plaintiff Sheryl Johnson in her Opposition to Cardtronics' Motion for Summary Judgment (Docket No. 38) in the related action, *In re: Cardtronics ATM Fee Notice Litigation*, Case No. 11-MD-2245 BEN (BLM). As explained in the Order Denying Summary Judgment (Docket No. 75), these arguments fail. Accordingly, Cardtronics' motion for summary judgment is **GRANTED** on the first claim.

## II.    CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200

The second claim alleges violation of California Business and Professions Code Section 17200. Although Cardtronics moves for summary judgment on all claims brought by Plaintiff, neither party addresses the second claim in their briefing. Accordingly, Cardtronics is granted leave to file supplemental briefing addressing this claim within fourteen (14) days from the date of this order. Plaintiff may file an opposition within fourteen (14) days from the date of the filing of Cardtronics' supplemental briefing, and Cardtronics may file a reply within seven (7) days from the date of the filing of Plaintiff's opposition.

## CONCLUSION

For the reasons set forth above, summary judgment in favor of Cardtronics is **GRANTED** on the first claim for violation of the Electronic Fund Transfer Act.

Cardtronics is **GRANTED** leave to file supplemental briefing addressing the second claim for violation of the California Business and Professions Code Section 17200 within fourteen (14) days from the date of this order. Plaintiff may file an opposition within fourteen (14) days from the date of the filing of Cardtronics' supplemental briefing, and Cardtronics may file a reply within seven (7) days from the date of the filing of Plaintiff's opposition.

**IT IS SO ORDERED.**

DATED: May 11, 2012

HON. ROGER T. BENITEZ
United States District Court Judge